In the Matter of the ESTATE OF EMIL MARANS, SYLVIA MARANS, Appellant, HOWARD MARANS and DONALEE MARANS LESSUK, Cross-Appellants, *v.* JOHN NEWLAND and ELMER MESTER, Respondents.

No. 10628

Submitted December 17, 1963. Decided March 25, 1964.

390 P.2d 443.

Kendrick Smith (argued), Robert A. Poore (argued), Butte, Schulz & Davis, Leonard A. Schulz, Dillon, for appellant.

James E. Purcell, Butte (argued), for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Emil Marans died on September 21, 1958, testate. His will directed payment of certain legacies and then in a residuary clause provided in part:

"I hereby give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, and wherever situate, after all legacies, Federal Estate Taxes and expenses of administration have been fully paid, to my beloved wife, Sylvia Marans, my daughter Donna Lee Marans and my son Howard Marans, equally, share and share alike, that is to say, ONE-THIRD (1/3) of said rest, residue and remainder to each of them * * *."

The widow, Sylvia Marans, filed a renunciation of the will and elected to take in lieu thereof her statutory share.

Another facet of this estate has been previously before this court in Estate of Marans, 141 Mont. 32, 374 P.2d 721.

On February 26, 1963, the executors petitioned the district court for a construction of the will and instructions as to the apportionment of federal estate taxes. From the petition it appears that the federal estate tax return on the decedent's estate (which by law includes probate and non-probate property showed a gross estate of $266,056.76 and a tax payable

thereon of $39,239.51, subject to final audit by the District Director of Internal Revenue; that a question exists as to who should pay the estate tax because the larger portion of the taxable estate is non-probate property jointly owned by the testator and his son and daughter. The petition called attention to the provision of the will heretofore quoted and the court was asked for advice concerning whether the full burden of the federal estate taxes should be paid out of the residue, or whether it should be apportioned between the residue and the jointly owned property.

The matter came on for hearing before the court and it appeared from the evidence submitted that the probate estate was now insolvent and no distribution of property would be made to the residuary legatees. Thereafter, the court filed an opinion relative to construction of the will and apportionment of federal estate taxes, providing in relative part:

"It is the opinion of the Court that:

"A. The will of the decedent contains a direction that federal estate taxes be paid out of the residue of said estate and

"B. The federal estate taxes are to be apportioned equally among those persons receiving the residuary estate of decedent, to wit: Howard Marans, Donalee Marans Lessuk, as provided by paragraph 5 of said will and Sylvia Marans, as provided by section 22-107, R.C.M.1947."

The opinion further provided:

"* * * It is the opinion of this Court that the Kennecott Stock held jointly in the name of decedent, Donalee Marans Lessuk and Howard Marans, and pledged as security for a loan in the sum of $12,500.00, is not a proper charge against the estate of said Emil Marans, deceased, but is the obligation of the surviving joint tenants and said stock held as security for the sum of $12,500.00 should be sold to pay this amount to the bank or the surviving joint tenants should pay the same and receive the stock without sale, and the claim of the First

National Bank against said estate should be reduced accordingly.''

Sylvia Marans appealed from the opinion and judgment; the son and daughter cross-appealed from that portion of the opinion and judgment which dealt with the Kennecott stock and the claim of the First National Bank.

As to the widow's appeal two questions are presented by the parties:

(1) Is she required to pay, or have deducted from her share of the estate, any part of the federal estate tax which arises from the property jointly owned by the deceased and his children; (2) and if the answer to the above question is yes, does the insolvency of the probate estate relieve the widow's share of its obligation respecting taxes generated by the jointly owned property? By reason of our holding on the first question, as hereinafter set forth, this second question requires no consideration. (During the probate proceedings allowances totaling $24,000 have been paid to the widow.)

The renunciation statute, section 22-107, R.C.M.1947, as amended, provides:

''Every devise or bequest to her by her husband's will shall bar a widow's dower in his lands and her share in his personal estate unless otherwise expressed in the will; but she may elect whether she will take under the provisions for her in the will of her deceased husband or will renounce the benefit of such provisions for her, and take her dower in the lands and her share in the personal estate under the succession statutes, as if there had been no will, but not in excess of two-thirds (2/3) of the husband's net estate, real and personal, after the payment of creditor's claims, expenses of administration and any and all taxes, including state and federal inheritance and estate taxes.''

The widow insists that this statute should not impose a tax burden from non-probate assets, such as the joint tenancy

property herein, upon her statutory share of the estate; the children take the contrary position.

The basic question, therefore, is whether the statute reflects a legislative intent to place the statutory share of a widow behind all federal estate taxes generated by the decedent's taxable estate, as distinguished from his probate estate, in order of priority. Both parties correctly agree that the question of the ultimate burden of the federal estate taxes in the present case is one of state, rather than federal, law. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131 (1942). It is also undisputed that while the testator may designate who shall bear the burden of the estate taxes, when the widow elects to take against the will such expression of intention by the testator is nullified. Wachovia Bank & Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879 (1953); First Camden National Bank & Trust Co. v. Hiram Lodge, etc., 134 N.Y.Eq. 303, 35 A.2d 490 (1944); Murphy v. Murphy, 125 Fla. 855, 170 So. 856 (1936).

The widow apparently does not take issue with the finding of the district court that the testator's residuary clause reflected an intention to charge the entire federal estate tax against the residue of his estate; while that finding is challenged by one of her assignments of error, no argument is addressed thereto, and the question is not necessary to our disposition of the issues to which the parties have addressed themselves. Therefore, we shall not concern ourselves with the question of whether the district court's finding on that point is correct.

Before considering the effect of section 22-107, supra, we will first consider where the burden of federal estate taxes on non-probate assets would lie in the absence of statutory or testamentary directions. On this question there are two clearly defined schools of thought. A number of jurisdictions hold that the entire tax must be discharged from the residuary estate, in accordance with the established rule prior to the

inception of the concept of the artificial "gross estate" for tax purposes. 37 A.L.R.2d 176 (1954).

However, the more recent cases have recognized that the new situation requires a new response and, on the theory of equitable apportionment, have held that the burden of federal estate taxes must be equitably allocated between probate and non-probate property in the decedent's taxable estate. 37 A.L.R.2d 171 (1954).

█ We adopt the latter view, for reasons well-expressed by the Supreme Court of New Mexico in these words:

"In recent years a number of jurisdictions have adopted the so-called minority rule. * * * These states now declare [that] the general rule that the residuary estate shall be liable for the payment of the federal estate tax, in the absence of other provision by the testator, or apportionment statute, has no application to non-testamentary property or non-probate assets. * * *

"We have not tallied the jurisdictions on each side, but although the earlier rule may still represent the majority opinion of jurisdictions passing upon the question, we feel no compunction to adhere inelastically to a rule which in the view of this court is not productive of substantial justice. Certainly the vitality of our legal system derives in large part from the function of our courts in applying its *root* concepts, among them that of equal treatment, to ever new and diversified problems." In re Gallagher's Will, 57 N.M. 112, 255 P.2d 317, 326, 328, (1953). See, also, Wilmington Trust Co. v. Copeland, 33 Del.Ch. 399, 94 A.2d 703 (1953) ; McDougall v. Central National Bank, 157 Ohio St. 45, 104 N.E.2d 441 (1952) ; Industrial Trust Co. v. Budlong, 77 R.I. 428, 76 A.2d 600 (1950).

Having established that equitable apportionment would be the rule in this state, in the absence of contrary instructions by a testator or the legislature, the question remaining is whether the legislature has given us such instructions. (As previously stated, the renunciation of the will by the widow

renders moot the question of what tax burdens the testator wished to place upon his widow's share of his property.)

■ We are of the opinion that section 22-107, supra, which subordinates a renouncing widow's statutory share to "all taxes, including state and federal inheritance and estate taxes" was not intended to encompass federal estate taxes generated by non-probate assets.

In the first place, the statute merely repeats the long-standing rule that taxes (along with debts and expenses of administration) take priority over distribution of the decedent's property to his survivors. As stated above, it is within the context of this axiom that the equally long-standing principle of equitable apportionment was invoked as a flexible and theoretically sound response to the new situation created by federal tax legislation. Viewed in this light, it is apparent that the statute actually indicates a neutral legislative attitude respecting the question of liability of testamentary property for estate taxes engendered by the existence of non-probate assets.

■ Furthermore, it is doubtful that the legislature would pass a law which could deprive a widow of her only protection from a devious husband who seeks to disinherit her through the artful allocation of the federal estate tax burden. Since a testator can specify which portions of his testamentary property shall be chargeable with the taxes upon his entire taxable estate, he is free to specify that the property bequeathed or devised to his widow shall be used to pay the estate taxes. If a large segment of his taxable estate consists of non-probate assets, this could be equivalent to a complete disinheritance of his widow. If, as the respondents and cross-appellants assert, the legislature intended to subordinate the widow's statutory share to taxes generated by non-probate assets, the effect of the statute would be to cut off the widow's only means of protection against "tax disinheritance," i. e., her option to take against the will and nullify the testator's

expressed intention relative to the taxes with which her share would be encumbered. In view of the policy of the law to protect a widow from disinheritance, as reflected by the very statute under consideration, we do not believe that respondents and cross-appellants interpretation of the statute is correct. In short, we do not impute to the legislature the intent to give and take away in one statutory pronouncement.

Such being our view the answer to the first question posed is no.

Since the second question posed need be answered only if we affirmatively answered the first, no comment thereon is necessary.

■ Turning now to the cross-appeal of the children which pertains to that portion of the opinion hereinbefore quoted, referring to the Kennecott stock and the claim of the First National Bank. The cross-appellants contend that the court erred in making a ruling on an issue not covered by the executor's petition. It very clearly appears that the executors' sole purpose in petitioning the court was to secure a construction of the will and instructions as to the apportionment of federal estate taxes. While some reference appears in the testimony at the hearing, the record does not indicate that it was ever in the contemplation of the parties that this issue was before the court for consideration.

However, the cross-appellants, in the interests of expediting administration of the estate, request a ruling on the proper disposition of the bank's claim and the Kennecott stock. Attached to their brief is a photostatic copy of the claim which shows that it was approved by the executors and allowed and approved by the court on December 15, 1958. While it is suggested that we refer to the transcript of the evidence at the earlier trial, the issue on which an opinion is here requested was not an issue therein, though, as in the hearing in this matter, testimony was given with respect to the loan and pledge of the stock. It would appear to us that The First

National Bank of Butte, the creditor, would of necessity have to be made a party in any proceeding involving either the claim or the pledge. They are not represented in this cause; they were not represented in the previous trial. They should have their day in court and we decline to go further at this time than to agree with cross-appellants that the court was in error in rendering an opinion with respect to the Kennecott stock and the claim of the bank.

For these reasons the cause is remanded to the district court with instructions to vacate the judgment and opinion herein referred to and to make and enter one not inconsistent with this opinion.

It is so ordered.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, ADAIR and DOYLE, concur.