455 P.2d 269

In the Matter of the ESTATES of Maria Lopez de GARCIA, also known as Maria L. Garcia and Maria Garcia, Deceased, and Francisco U. Garcia, also known as Francisco Garcia, Deceased.

Isabel Garcia de LUNA; Beatriz G. Flores; Anita Garcia Flores; Soledad Garcia Hubbard; Angelita Garcia Lopez; and Rosita Garcia De Leon, Appellants,

v.

Armando GARCIA, Individually and as Fiduciary of the Estate of Maria Lopez Garcia, Deceased, and Armando Garcia and Manuel Garcia as Co-Fiduciaries of the Estate of Francisco U. Garcia, Appellees.

No. 2 CA–CIV 584.

Court of Appeals of Arizona.

May 26, 1969.

Rehearing Denied June 20, 1969.

Review Denied Sept. 23, 1969.

Russo, Cox & Dickerson, by Vernon F. Dickerson, Tucson, for appellants.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellees.

MOLLOY, Chief Judge.

This appeal questions the propriety of charging the residuary beneficiaries of a will with State and Federal estate taxes, attorneys' fees and other expenses of administration and relieving a specific devisee under the will from paying any portion of such charges.[1]

We are concerned with the provisions in two reciprocal wills, executed by husband and wife. Each will makes a specific devise of a ranch property, which constituted approximately half of the total value of the community assets, to the surviving spouse, for life, with the remainder over to a son, Armando Garcia, the appellee here. After this specific devise, both wills leave "[a]ll of the rest and residue * * *" of the estate of the deceased to the surviving spouse for life and then over to eight other children of this couple, six of whom are the appellants here. The wills also contain provisions that in case the spouse had predeceased the testator (rix), the ranch shall pass outright to Armando, and the residue of the estate to the eight children. The wife died first and then the husband. Both

wills were admitted to probate and the identical legal question is presented in both probates as to the proper method of charging death taxes and expenses of administration. The wills do not charge any specific property with the payment of debts, expenses of administration, or estate taxes.

Both sides agree that the question is controlled by state law. *See* Fernandez v. Wiener, 326 U.S. 340, 345, 66 S.Ct. 178, 181, 90 L.Ed. 116 (1945). The appellants, the residuary legatees, who were charged with all of these expenses in the decree of distribution, rely upon the wording of a code provision and the doctrine of "equitable apportionment" to upset the decision reached.

We turn first to the contention that our statutory law requires that these costs be apportioned between the specific devisee and the residuary legatees. Appellants contend that this result is dictated by A.R.S. § 14–686:

"The estate, real and personal, given by will to legatees or devisees is liable for the debts, expenses of administration and family allowance *in proportion to the value or amount of the several devises or legacies,* but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator and there is other estate sufficient for that purpose." (Emphasis added)

The appellants argue that there is nothing in this will to indicate an intention on the part of the testator (testatrix) that the specific devise to Armando should be exempt from liability and therefore all charges against this estate should be prorated between the specific and the residuary beneficiaries.

We disagree with this contention. The above-quoted statute must be read in the light of other statutory provisions upon this same subject, State ex rel. Church v.

1. The appeal is taken from the decree of distribution in two probates. Such an order is appealable under A.R.S. § 12–2101, subsec. J, par. 4, as amended. We dismissed as premature a previous appeal taken by these parties. *See* In re Garcia's Estates, 7 Ariz.App. 114, 436 P.2d 626 (1968).

Arizona Corporation Commission, 94 Ariz. 107, 110–111, 382 P.2d 222, 224 (1963), and when this is done, a statutory scheme for the payment of debts and expenses of administration becomes apparent. The statutes immediately preceding the above-quoted section are enlightening:

"§ 14–684.

"A. If the testator provides in his will or designates the estate to be appropriated for payment of his debts, the expenses of administration or family allowance, the payment shall be made according to such provision or designation so far as the estate designated is sufficient.

\* \* \*"

"§ 14–685.

"If the provision made by the will or the estate appropriated therefor is insufficient to pay the debts, expenses of administration and family allowance, that portion of the estate not devised or disposed of by will, if any, may be appropriated and disposed of for that purpose, and *if not sufficient, from the property devised or bequeathed to residuary devisees and legatees*." (Emphasis added)

The "Historical Note" in the 1956 code indicates that all three sections quoted above (A.R.S. §§ 14–684—686) were "[a]dopted from California, see West's Ann.Prob.Code, § 750." [2] Our own perusal of early California statutory law convinces us that the source of our statutory law is California, but that we have taken this law from legislation which considerably antedates Probate Code § 750. This latter code section was adopted in California by the Statutes of 1931, Ch. 281, at 634, § 750.

As indicated in the historical notes to these sections from our 1956 code, the predecessors to our statutes have been with us since the Revised Statutes in 1901, in which volume these sections above quoted were then designated as §§ 1799 (now A.R.S. § 14–684, subsec. A), 1801 (now A.R.S. § 14–685), and 1802 (now A.R.S. § 14–686). A comparison with California law of comparable vintage indicates that the counterpart of what is now A.R.S. § 14–685 was § 1359 of the California Civil Code, adopted in 1874 as part of the Code Amendments 1873–74 (*see* historical note after § 1359 in the California Civil Code, Deering, 1923). Section 1359 read as follows:

"The property of a testator, except as otherwise specially provided in this code and the Code of Civil Procedure, must be resorted to for the payment of debts, in the following order:

"One. The property which is expressly appropriated by the will for the payment of the debts;

"Two. Property not disposed of by the will;

"Three. Property which is devised or bequeathed to a residuary legatee;

"Four. Property which is not specifically devised or bequeathed; and

"Five. All other property ratably. Before any debts are paid, the expenses of the administration, and the allowance to the family, must be paid or provided for."

Coexisting with this provision in the Civil Code of California was a provision in its Code of Civil Procedure, which is ob-

2. West's Ann.Prob.Code, § 750 reads as follows:

"If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, the expenses of administration, or family allowance, they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose; and *if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same*, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate." (Emphasis added)

viously the ancestor of our A.R.S. § 14–686, the section upon which appellees rely:

§ 1563. *Estate subject to debts, etc.*

"The estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and family expenses, *in proportion to the value or amount of the several devises or legacies,* but specific devises or legacies are exempt from such liability if its appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate." (Emphasis added) (Deering's Code of Civil Procedure, California, 1923, indicates that this section was adopted on March 11, 1872.)

In re De Bernal's Estate, 165 Cal. 223, 131 P. 375, 380 (1913), considers, but does not decide, whether there is a conflict between these two quoted sections of early California law. The apparent conflict between their provisions was resolved in California subsequently by judicial decision. In re Babb's Estate, 200 Cal. 252, 252 P. 1039 (1927); In re Bacigalupi's Estate, 105 Cal.App. 578, 288 P. 122, 123 (1930). In *Babb,* the Supreme Court of California said:

"Property bequeathed to a residuary legatee must be resorted to for the payment of the debts of the deceased, funeral expenses, and expenses of administration, prior to any resort being made to property specifically devised or bequeathed. Civ.Code, § 1359; Code Civ.Proc. § 1563." 252 P. at 1042.

Section 750 of the present California Probate Code is obviously an amalgamation of these two pertinent code sections of the earlier California Codes which were synthesized in the *Babb* and *Bacigalupi* decisions, and this code section now states clearly and concisely the law upon this subject in California.

Before declaring what we believe to be the intent of the counterpart Arizona sections, it should be noted that what is now A.R.S. § 14–685 has not always read the same. Until the 1928 Revised Code, this section had read:

"If the provision made by the will or the estate appropriated therefor is insufficient to pay the debts, expenses of administration and family expenses, that portion of the estate not devised or disposed of by the will, if any, *must* be appropriated and disposed of for that purpose, according to the provisions of this chapter." (Emphasis added) Revised Statutes of Arizona § 943 (1913).

The 1928 codification, § 4035, changed the word "must" to "may." It is our view that no substantial change was intended by so doing. In re Sullivan's Estate, 38 Ariz. 387, 393, 300 P. 193 (1931). The 1928 language remained until 1956, when by the Laws of 1956, Ch. 116, there was added the following language:

"* * * and if not sufficient, from the property devised or bequeathed to residuary devisees and legatees."

If these statutes were ambiguous before this 1956 amendment, we do not believe they are afterwards. It seems to this court that reading these various provisions together, it is reasonably clear that the California system, as now contained within § 750 of the Probate Code, quoted *supra,* n. 2., has been adopted in Arizona. We are reinforced in this conclusion when it is pointed out that this statutory scheme is substantially the same as that which prevailed at the common law. *See* 6 Bowe-Parker; Page on Wills (1962) §§ 53.5–53.8, at 213–22; Atkinson on Wills (2d ed. 1953) § 136, at 754–56; Thompson on Wills (3d ed. 1947) § 506, at 729, and § 511, at 733.

The rationale behind the common-law rule is that it is the intention of the testator which must be ascertained, and, in the absence of any contrary indication of intent, it is natural to presume that the testator intended a general devise of the residue of his estate to be that which was remaining after specific legacies and devises, and after the payment of debts and costs of administration. Sinnott v.

Gidney, 159 Tex. 366, 322 S.W.2d 507, 511 (1959). Our Supreme Court has indicated that the guiding principle in the probate of a will is to carry out the will of the testator. In re Estate of Harber, 99 Ariz. 323, 326, 409 P.2d 31, 33 (1965). That debts of the deceased are chargeable against the residuary estate before they can be charged against specific bequests is the holding of In re Wiswall's Estate, 89 Ariz. 68, 358 P. 2d 172 (1960). Hence, to the extent that this appeal challenges the method of the payment of "* * * debts, expenses of administration and family allowance * * *," it must fail.

The question remains as to whether estate taxes fall within this category of charges that must be borne first by the residuary estate. We recently had occasion to point out the serious conflict of authority in this country, both from a legislative and a judicial standpoint, as to whether estate taxes should be equitably apportioned upon all property made a part of the taxable estate of the decedent by federal and state law. See Brewer v. Peterson, 9 Ariz. App. 455, 453 P.2d 966 (1969).

Though some of the authority cited in *Brewer* (Annot., 37 A.L.R.2d 169, and Op. Atty. Gen. 8 (1967)), on hasty reading, would lead one to believe that there is only *one* rule of equitable apportionment, we are satisfied that there are at least two rules of apportionment that have been adopted by legislation and judicial decision in this country. The two possibilities result from the fact that assets which are no part of the probate estate are included in the taxable estate by both federal, 26 U.S. C.A. §§ 2034–2044, and state, A.R.S. § 42–1511, law.

In effect, as to estate taxes, there are two estates:

"But the probate estate and the non-probate trust are in reality separate entities: the former was the testator's true estate,

of which he disposed by his will; the latter was not his property." Myers v. Sinkler, 235 S.C. 162, 110 S.E.2d 241, 247 (1959).

The presumption that the testator intended the residuary estate to be subordinate to costs of administration loses most of its strength as to taxes which are generated by property which is no part of his estate. See Scoles, Apportionment of Federal Estate Taxes and Conflicts of Laws, 55 Colum.L.Rev. 261, 279 (1955).

Hence, two rules of "equitable apportionment," have developed which the author of the comment at 16 DePaul L.Rev. 112 et seq. (1966), denominates "total" and "partial" apportionment. "Total" apportionment refers to those statutes and judicial decisions which have adopted a rule that all assets, probate or non-probate, which make up the taxable estate of the decedent must bear their prorated share of the estate taxes levied. The "partial" rule is that the estate taxes are apportioned between the probate and the non-probate assets and that as to the estate tax allocated to the probate assets, the taxes are charged against those assets which normally bear costs of administration. As we pointed out in Brewer, 453 P.2d at 970, most of the decisions which have reached an apportionment result without a statute have adopted a rule of "partial" apportionment. We are here concerned with only probate assets and if the rule of this state be the "partial" one, there would be no apportionment here.

Prior to the landmark case of Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942), it was generally held that estate taxes should be charged against the residual estate. New Hampshire was one of the few states taking a contrary view [3] and it reversed its stand. Amoskeag Trust Co. v. Trustees of Dartmouth College, 89 N.H. 471, 200 A. 786, 117 A.L.R. 1186 (1938). The reasoning of these many

3. Fuller v. Gale, 78 N.H. 544, 546, 103 A. 308, 309 (1918); Williams v. State, 81 N.H. 341, 125 A. 661, 39 A.L.R. 490 (1925); Foster v. Farrand, 81 N.H. 448, 450, 128 A. 683 (1925).

decisions (collected in Annots., at 7 A.L.R. 708, 105 A.L.R. 320, 117 A.L.R. 1191, 37 A.L.R.2d 169) was in part based on the wording of the federal act, and when *Riggs* held that this was a problem for determination by state law, there was a distinct shift in both judicial decisions and legislation towards apportionment. In the latest A.L.R. annotation on this subject, 37 A.L.R.2d 169, at 171, we find the flat statement that:

> "In jurisdictions which have passed upon the question for the first time since 1942, it is generally held that the burden of estate taxes must ultimately be borne by every part of the taxable estate and that every beneficiary must pay a pro rata share of the tax."

Our research indicates that this statement is probably erroneous, insofar as the problem at hand is concerned, that is, when courts have been dealing with probate assets under a will with specific and residual bequests. In such a situation, we believe that the majority of post-1942 decisions have favored "partial" rather than "total" apportionment, so that specific legatees and devisees have usually not been charged with a share of the tax if there is sufficient residual estate.

The following post-1942 decisions hold that, as to whatever portion of the estate taxes are to be charged against the probate estate, the usual rule of charging the residuary estate prevails: Sinnott v. Gidney, 159 Tex. 366, 322 S.W.2d 507 (1959) (reserving, at 513, question of apportionment as to non-probate assets); Meier v. Denver United States National Bank, 431 P.2d 1019 (Colo.1967); In re Gallagher's Will, 57 N.M. 112, 255 P.2d 317, 37 A.L.R.2d 149 (1953); Hooker v. Drayton, 69 R.I. 290, 33 A.2d 206, 209, 150 A.L.R. 723 (1943), *compare* Hazard v. Bliss, 43 R.I. 431, 444, 113 A. 469, 474, 23 A.L.R. 826 (1921); McDougall v. Central Nat. Bank of Cleveland, 157 Ohio St. 45, 104 N.E.2d 441

(1952); and Myers v. Sinkler, 235 S.C. 162, 110 S.E.2d 241 (1959).

Opposed to the above-cited cases are these "total" apportionment decisions: McKinney v. Mount Sterling National Bank, 310 Ky. 186, 220 S.W.2d 379 (1949); Succession of Ratcliff, 212 La. 563, 33 So. 2d 114 (1947); and Hammond v. Wheeler, 347 S.W.2d 884 (Mo.1961).

Some decisions have held, in a different, but closely related, context, that federal estate taxes are in the same category as debts of the deceased and costs of administration. In re Glover's Estate, 45 Haw. 569, 371 P.2d 361 (1962) (reserving, at 373, question of apportionment as to non-probate assets); In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 648, 38 A.L.R.2d 961 (1953); Wachovia Bank & Trust Co. v. Green, 236 N.C. 654, 73 S.E.2d 879 (1953); Guaranty National Bank v. Mitchell, 144 W.Va. 828, 111 S.E.2d 494 (1959).

Some decisions have held that there would be equitable apportionment as to non-probate assets, without deciding the law as to apportionment between probate assets: Doetsch v. Doetsch, 312 F.2d 323 (7th Cir. 1963) (applying Arizona law); Regents of University System v. Trust Co. of Georgia, 194 Ga. 255, 21 S.E.2d 691 (1942); Pearcy v. Citizens Bank & Trust Co. of Bloomington, 121 Ind.App. 136, 96 N.E.2d 918 (1951); Bragdon v. Worthley, 155 Me. 284, 153 A.2d 627 (1959); Marans v. Newland, 143 Mont. 388, 390 P.2d 443 (1964); In re Berzel's Estate, 101 N.W.2d 557 (N.D.1960); and Beatty v. Cake, 236 Or. 498, 387 P.2d 355 (1963) (pointing out, at 358, that the holding of the case is limited to an inter vivos trust, a non-probate asset).

One court has rejected equitable apportionment as to both probate and non-probate assets. Seattle-First Nat. Bank v. Macomber, 32 Wash.2d 696, 203 P.2d 1078 (1949). Legislatively, the conflict has been going in favor of "total" apportionment.[4]

---

4. The DePaul L.Rev. comment, *supra*, at 116–17, indicates that eighteen states have provided by statute for total apportionment, while three states have adopted the rule of "partial" apportionment, and two states have adopted statutes specifically rejecting both types of apportionment.

We have already noted that our pertinent statutory law has ancestral relationship with California legislation. Until the adoption of the California apportionment statute, § 970 et seq. of the Probate Code, by Statutes of 1943, Ch. 894, it appears to have been the law of California that estate taxes were to be charged against the residuary estate in the same manner as debts and costs of administration. *See* In re Miller's Estate, 184 Cal. 674, 195 P. 413, 416, 16 A.L.R. 694 (1921); In re Coffee's Estate, 19 Cal.2d 248, 120 P.2d 661 (1941); In re Atwell's Estate, 85 Cal.App.2d 454, 193 P.2d 519, 522 (1948); In re Elston's Estate, 32 Cal.App.2d 652, 659, 90 P.2d 608 (1939); In re Welsh's Estate, 89 Cal.App. 2d 43, 200 P.2d 139, 144 (1948); In re Hotaling's Estate, 74 Cal.App.2d 898, 170 P.2d 111, 113–114 (1946); and Rogan v. Taylor, 136 F.2d 598, 600 (9th Cir. 1943) (applying California law).

■ We see no compelling reason to exclude the obligation to pay estate taxes from a category of obligation in which the debts of the deceased and the expenses of administration are placed. The federal act provides that these taxes are to be paid by the "executor," [5] 26 U.S.C.A. § 2002. We are dealing with estate taxes, not inheritance taxes. An estate tax is a levy on the right to transfer property on death, and not on the receipt of benefits from the estate. Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564 (1924); and *see* Kelly v. Bastedo, 70 Ariz. 371, 376–377, 220 P.2d 1069, 1072–1073 (1950).

Estate taxes are not innovations in our law. The first United States estate tax law came into being through 1862 and 1864 congressional acts. Knowlton v. Moore, 178 U.S. 41, 51, 20 S.Ct. 747, 752, 44 L.Ed. 969 (1900). The concept immigrated to us from England, where a "probate duty," fixed upon the amount of personal property in an estate, and paid as an expense of administration, was established in 1694. *See* In re Inman's Estate, 101 Or. 182, 199 P. 615, 616, 16 A.L.R. 675 (1921). An estate tax has been a part of our federal law continuously since 1916. 39 Stat. 777, Ch. 463, and *see* historical note to 26 U.S.C.A. § 2001. Our state estate tax was adopted in 1937. Laws of 1937, Ch. 27.[6]

■ Surely most testators who make a formal will and who have accumulated sufficient estate to be subject to estate taxes will be aware to some extent that there are such levies. We believe the normal presumption that the decedent intended the residuary estate to be first charged with debts and expenses of administration should also be applicable to estate taxes.

■■ It would, of course, be more appealing to adopt a rule charging the residuary estate when the residuary beneficiary is a blood stranger to the deceased, as was the case in Young Men's Christian Ass'n v. Davis, 106 Ohio St. 366, 140 N.E. 114 (1922), aff'd, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1925), rather than in the situation presented here, where non-apportionment will make an already disparate disposition between blood descendants even more disparate. But the rule we adopt should be one to apply to a substantial band in the spectrum of variations in testamentary dispositions so as to avoid a rule that will breed litigation. Therefore, we hold that when specific provision for the payment of estate tax is omitted from a will and when it is a matter of allocating these charges between specific versus residuary bequests, the residuary estate must be first charged with the payment of these taxes.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.

---

5. The word executor is defined in 26 U.S.C.A. § 2203 as including both an executor and an administrator, or, if there is none, then any person in possession of any property of the deceased.

6. Previously, this state had had an inheritance tax since 1913. In re Hubbs, 31 Ariz. 252, 257, 252 P. 515, 517 (1926).