613 P.2d 1291
**Julia SANDERS, Petitioner-Appellee and Cross-Appellant,**

v.

**Edward A. BOYER, Respondent-Appellant and Cross-Appellee.**

**No. 1 CA–CIV 4386.**

Court of Appeals of Arizona,
Division 1, Department C.

June 24, 1980.

236

Kunz & Waugh, Ltd. by Richard M. Waugh, Phoenix, for petitioner-appellee and cross-appellant.

Crotts & Laird, P. C. by Mitchell C. Laird, Phoenix, for respondent-appellant and cross-appellee.

## OPINION

HAIRE, Judge.

The primary issue presented in this appeal is whether the trial court erred in ordering the Arizona domiciliary personal

representative (appellant) to pay from the residuary estate (of which appellant is the beneficiary) all estate taxes and the cost of ancillary administration relating to certain Oklahoma real property which was specifically devised to appellee. The estate taxes in issue were those imposed by the State of Oklahoma. We affirm the trial court's order.

At the time of her death, the decedent, Julia May Boyer, was domiciled in Arizona, and owned real property in Arizona and Oklahoma. She also owned personal property consisting of various bank accounts, escrow funds and negotiable instruments, located in Arizona, Texas and Oklahoma. In 1976 her surviving spouse, appellant, commenced formal testacy proceedings in Arizona which led to the admission of the decedent's will to probate, and the eventual appointment of appellant as the domiciliary personal representative.

The provisions of the last will and testament of decedent, pertinent to the issues raised on this appeal, are as follows:

"SECOND: I authorize my Personal Representative to pay my just, matured, debts when and as deemed reasonable and proper, and to pay the costs of my last illness, funeral and burial, taxes and costs of administration from my estate as soon as deemed feasible and practicable.

"THIRD: If I own the same at the time of my death and she is then living I hereby will and devise unto JULIA SANDERS, my niece, who presently lives in Circle, Montana, the real estate consisting of about 160 acres that I presently own in Tillman County, Oklahoma, the title of which and the description of which may be found of record in the County Records of Tillman County, Oklahoma, if she is not living at time of distribution said property will go as residue of my estate.

"FOURTH: I hereby will and devise unto my husband EDWARD A. BOYER all of the remaining and residue of my property and estate, of every kind and character, wheresoever the same may be located, and including but not limited to the MARSHALL MORTGAGE COMPANY notes, and all other property and estate of mine not herein otherwise disposed of, absolutely."

In connection with the devise of the Oklahoma real property to appellee (decedent's niece), appellant established ancillary probate proceedings in Oklahoma, with himself as the ancillary personal representative. He collected the rents and profits from the land (which was leased for farming) and hired local attorneys to represent the estate and prepare the Oklahoma estate tax return.

In October 1977, in response to inquiries from appellee as to when the Oklahoma real property could be distributed, appellant advised appellee that he would distribute the Oklahoma real property to her "if you will pay the taxes pertaining thereto, including estate taxes, and the cost of administration in Oklahoma." This was contrary to the advice which appellant's own Oklahoma counsel had given him to the effect that in the absence of a specific provision in the will to the contrary, Oklahoma statutes imposed on the residuary estate the burden of all debts, including taxes and administration. When appellee failed to agree to pay the Oklahoma estate taxes and costs of ancillary administration, appellant advised all parties of his intention to mortgage or sell the Oklahoma real property in order to pay these sums.

In order to prevent appellant from jeopardizing her interest in the property devised to her, appellee then filed a petition in the Arizona probate proceedings seeking an order directing him to pay from the residuary estate in Arizona the Oklahoma and federal estate taxes relating to the Oklahoma real property together with the costs of the Oklahoma ancillary administration. The petition also sought an order restraining appellant from mortgaging, selling or otherwise hypothecating the Oklahoma real property. The Arizona probate court entered an order granting the relief requested, and appellant has appealed from that order.

The issues raised by appellant in this appeal fall essentially into two areas. First, he questions the jurisdiction of the Arizona court to issue orders which he characterizes as "directly interfering with the ancillary administration of real property located in a foreign jurisdiction." Second, he questions the merits of the trial court's order, contending that estate taxes imposed by a foreign state on real property located in that state should be paid from the foreign property generating the tax. Appellee has filed a cross-appeal, raising issues which will be discussed later in this opinion.

We consider first the merits of the trial court's order. Although Arizona enacted the Uniform Probate Code in 1973, it failed to enact Uniform Probate § 3–916.[1] Therefore, Arizona has no statute which makes *specific* provision for the apportionment of estate tax liabilities generated by specific assets against the various interests of persons receiving assets from the decedent's estate. However, Arizona is not without case law and general statutory guidelines in that regard. In *In re Estates of Garcia*, 9 Ariz.App. 587, 455 P.2d 269 (1969), the appellant questioned the propriety of charging the residuary beneficiaries of a will with state and federal estate taxes, attorney's fees and other expenses of administration, thereby relieving a specific devisee under the will from paying any portion of such charges. In a thorough and well-reasoned opinion, Judge Molloy reviewed the status of Arizona law prior to the adoption of the Uniform Probate Code, and held as follows:

"... we hold that when specific provision for the payment of estate tax is omitted from a will and when it is a matter of allocating these charges be-

tween specific versus residuary bequests, the residuary estate must be first charged with the payment of these taxes." 9 Ariz.App. at 593, 455 P.2d at 275.

The court's conclusions in *Garcia* were based in part on Arizona's then-existing general statutory provisions governing the respective liabilities of specific and residuary devisees and legatees for the estate debts and expenses of administration. *See* A.R.S. §§ 14–684, 685 and 686, repealed, Laws 1973, Ch. 75, effective January 1, 1974. After considering these provisions, the *Garcia* court stated:

"We see no compelling reason to exclude the obligation to pay estate taxes from a category of obligation in which the debts of the deceased and the expenses of administration are placed."

9 Ariz.App. at 593, 455 P.2d at 275.

After the above observation, the *Garcia* court then concluded that under the existing statutory provisions, a specific provision in the will would govern estate tax apportionment, and, in the absence of such a provision, then, as between specific and residuary devises,[2] the residuary must bear the estate tax burden.

■ The statutory provisions discussed in *Garcia, supra,* were repealed when Arizona enacted the Uniform Probate Code, effective January 1, 1974. Present statutory provisions governing the order in which assets of the estate will be appropriated for the payment of claims, allowances and charges, with the consequent order of abatement of devises made by the decedent's will, are now found in A.R.S. § 14–3902.[3] The ambiguities found in the prior

---

1. Uniform Probate Code § 3–916 copies the Uniform Estate Tax Apportionment Act, with express provisions dealing with the apportionment of estate tax liabilities. We express no opinion as to whether the apportionment provisions of the Uniform Probate Code's § 3–916 would have applied to the Oklahoma estate tax here involved, even if it had been enacted as a part of Arizona's probate code.

2. In this opinion we use the term "devise" as including both real and personal property. *See* A.R.S. § 14–1201(9).

3. A.R.S. § 14–3902 is substantially identical to the Uniform Probate Code's § 3–902, and provides as follows:

 "§ 14–3902. Distribution; order in which assets appropriated; abatement

 "A. Except as provided in subsection B, shares of distributees abate, without any preference or priority as between real and personal property, in the following order:
 1. Property not disposed of by the will.
 2. Residuary devises.
 3. General devises.
 4. Specific devises.

Arizona statutes, discussed in detail in *Garcia*, have now been eliminated, with § 14–3902 clearly giving primacy to the order of abatement expressed in the will or the intention of the testator as otherwise expressed or implied. In the absence of such a provision or expression of the testator's intent, then subsection 14–3902 A is applicable and provides for the order in which the assets will be appropriated.

Applying *Garcia* and § 14–3902 to the facts of this case, we first note that no facts were presented which would bring into play subsection B. The will contained no express provision governing the charging of estate taxes nor any other express abatement provision,[4] nor was evidence presented to show that the "testamentary plan or express or implied purpose of [any] devise would be defeated by the order of abatement stated in subsection A." Under these circumstances, the comment to the Uniform Probate Code's § 3–902 is particularly pertinent:

"A testator may determine the order in which the assets of his estate are applied to the payment of his debts. If he does not, then the provisions of this section express rules which may be regarded as approximating what testators generally want."

Appellant urges that a different rule ought to be applied here because we are dealing with another state's estate tax generated by real property situated in that state. However, no authority, or logical or persuasive reasoning is given which provides support for that contention. To the contrary, we note that A.R.S. § 14–3815 A sets forth the duty of the personal representative when there is administration in more than one state, and expressly provides that all assets being administered in this state "are subject to all claims, allowances and charges existing or established against the personal representative *wherever appointed*." (Emphasis added). As indicated in the Uniform Probate Code's comment, this section has the effect of subjecting all assets of the decedent, wherever they may be located and administered, to claims properly presented in any local administration.[5]

"For purposes of abatement, a general devise charged on any specific property or fund is a specific devise to the extent of the value of the property on which it is charged, and upon the failure or insufficiency of the property on which it is charged, a general devise to the extent of the failure or insufficiency. Abatement within each classification is in proportion to the amounts of property each of the beneficiaries would have received if full distribution of the property had been made in accordance with the terms of the will.

"B. If the will expresses an order of abatement, or if the testamentary plan or the express or implied purpose of the devise would be defeated by the order of abatement stated in subsection A, the shares of the distributees abate as may be found necessary to give effect to the intention of the testator.

"C. If an estate of a decedent consists partly of separate property and partly of community property:

1. Community debts shall be charged against community property.

2. Separate debts shall be charged against separate property and against the balance of decedent's half of community property.

3. Expenses of administration shall be charged against separate property and decedent's half of community property in proportion to the relative value thereof, but any special expenses attributable to management of community property may be charged against the entire community property.

"D. If the subject of a preferred devise is sold or used incident to administration, abatement shall be achieved by appropriate adjustments in, or contribution from, other interests in the remaining assets."

4. To the extent that any intention of the testatrix as to the intended order of abatement can be gleaned from the will, it appears to this Court that her intent was in accord with the trial court's order.

5. We are aware that A.R.S. § 14–1201(4), which defines "claims", provides that the "term [claims] does not include estate or inheritance taxes. . . ." It was necessary to include this as a part of the Uniform Probate Code because of the Uniform Probate Code's § 3–916, which deals with the treatment of estate tax claims in an all-inclusive enactment. In view of Arizona's failure to enact Uniform Probate Code § 3–916 perhaps the inclusion of the above-quoted provision as a part of Arizona's § 14–1201(4), was inadvertent, although it might have some viability insofar as concerns the apportionment of estate taxes relating to nonprobate assets. In any event, the word "charges" in § 14–3815 A is sufficiently broad to include the estate tax charges involved in this proceeding.

■ Likewise, appellant's arguments concerning the doctrine of equitable apportionment of estate taxes has no application to the facts of this case involving only probate assets. The equitable apportionment doctrine was thoroughly discussed in *Garcia, supra,* and as indicted in that opinion, in fact involves two rules. These are usually called the rule of "total" apportionment and the rule of "partial" apportionment, and are defined in *Garcia, supra,* as follows:

" 'Total' apportionment refers to those statutes and judicial decisions which have adopted a rule that all assets, probate or non-probate, which make up the taxable estate of the decedent must bear their prorated share of the estate taxes levied. The 'partial' rule is that the estate taxes are appointed between the probate and the non-probate assets and that as to the estate tax allocated to the probate assets, the taxes are charged against those assets which normally bear costs of administration."

9 Ariz.App. at 591, 455 P.2d at 273.

Examples of nonprobate assets include life insurance, joint tenancy interests and other property which is not subject to probate and not part of the probate estate, but which is taken into consideration in determining the gross estate for federal estate tax purposes. Thus, even if Arizona followed the rule of partial equitable apportionment as contended by the appellant, and as suggested in *Doetsch v. Doetsch,* 312 F.2d 323 (7th Cir. 1963), the Oklahoma estate taxes here involved would still be paid from those assets which normally bear the costs of administration, that is, the residuary estate.[6]

■ We therefore hold that the trial court was correct in ruling that the residu-

ary estate was chargeable with all estate taxes relating to the Oklahoma real property and the costs of the ancillary administration in the state of Oklahoma.

We now consider appellant's contention that an Arizona probate court "does not have jurisdiction to issue an order directly interfering with the ancillary administration of real property located in a foreign jurisdiction." In this connection appellant relies upon several Arizona decisions which generally deny to personal representatives extra-territorial jurisdiction or amenability to suit beyond the jurisdiction of their appointment. *See, e. g., Farnsworth v. Hubbard,* 78 Ariz. 160, 277 P.2d 252 (1954); *Estate of Nolan,* 56 Ariz. 366, 108 P.2d 391 (1940); and *Day v. Wiswall,* 11 Ariz.App. 306, 464 P.2d 626 (1970). We note that these decisions all pre-date Arizona's enactment of the Uniform Probate Code, and therefore the continued viability of the broad general principles stated therein is questionable. *See generally,* A.R.S. §§ 14–4205; 14–4301 and 14–4302. However, we need not decide the applicability of the Uniform Probate Code, as appellant's jurisdictional questions are based upon an incorrect factual and legal premise.

■ There is no showing here that the trial court's orders were directed against appellant in his capacity as the personal representative of a foreign ancillary administration being sued in the Arizona courts. Rather, appellant's appearance in the courts of this state was in his capacity as an Arizona appointed domiciliary personal representative having control over the residuary estate, with appellee seeking to enforce payments from that residuary estate. Certainly the Arizona probate court had subject matter jurisdiction, A.R.S. § 14–1302, and the power to enforce its orders by

---

6. Professor Effland has contrasted Arizona's pre-Uniform Probate Code apportionment law with that existing after enactment of the Uniform Code, as follows:

"One large pitfall [in estate planning] continues to be the problem of tax apportionment. The trap is not new, nor is it any different. It simply continues to exist because Arizona neither included section 3–916 of the UPC nor made any express provision

for tax burden. Hence the old Arizona law continues. Within the probate estate the burden of taxes still falls on the residue, and after the residue the various devises abate in the order provided by section 14–3902." (Footnotes omitted).

"Estate Planning Under the New Arizona Probate Code", Arizona State Law Journal 1974: One at 24, '74.

restraining or enjoining the personal representative, or even by contempt or body attachment if necessary. *See* A.R.S. §§ 14–1302, 14–3606. Here the appellant has not shown any conflict between the orders issued by the Arizona trial court and any order issued by an Oklahoma court, or conflict with any duty imposed upon him by Oklahoma law as an ancillary personal representative in that state.[7] Under these circumstances we find no substance or merit in appellant's jurisdictional arguments. Therefore the trial court's order directing appellant to pay all estate taxes on the property devised to appellee and the costs of the ancillary administration from the residuary estate is affirmed.

 We next consider the issues raised in appellee's cross-appeal. She first argues that the trial court erred in not awarding her attorney's fees against appellant or the estate. We find no error. Under Arizona law the long-standing general rule has been that attorney's fees are not allowed except where expressly provided for by either statute or contract. *Colvin v. Superior Equipment Company*, 96 Ariz. 113, 392 P.2d 778 (1964). In considering a claim for attorney's fees as an estate charge in *In re O'Brien's Estate*, 18 Ariz.App. 375, 502 P.2d 176 (1972), this Court stated:

> "This rule [as stated in *Colvin*] has been amplified in probate proceedings to provide that:
>
> '[N]o allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate.'
>
> "*In re Balke's Estate*, 68 Ariz. 373, 379, 206 P.2d 732, 736 (1949).

"This rule holds true even though the estate may have substantially benefited from the attorney's services. *Pintek v. Superior Court*, 81 Ariz. 255, 304 P.2d 392 (1956)."

18 Ariz.App. at 378, 502 P.2d at 179.

In view of Arizona decisional law, we find the cases cited by appellee from other jurisdictions unpersuasive.

 Appellee urges that A.R.S. § 14–3712[8] now authorizes recovery of attorney's fees in probate litigation. We do not construe the provision of the personal representative's liability for "damage or loss" contained in § 14–3712 as constituting an express provision for the recovery of attorney's fees within the meaning of prior case law in this area.[9] We therefore find no error in the trial court's denial of attorney's fees to appellee.

Appellee next contends that the trial court committed error in not ordering an accounting and removing appellant as personal representative. In this connection appellee states:

> "The record in the instant case demonstrates *inexcusable* conduct on the part of the Personal Representative. Instead of carrying out the Will of the decedent and properly discharging the duties of his office, Mr. Boyer acted purposely to abate a specific devise in order to promote his own interests as residuary legatee. He took control of the decedent's bank funds in Oklahoma and transferred them to Arizona. He collected the rents and profits on the land devised to Julia Sanders, amounting to approximately $3,000.00 per year, without accounting therefor. He subsequently delayed settlement of the

---

7. In fact, as we have previously indicated, insofar as arguably applicable, appellant's Oklahoma counsel expressly advised him that Oklahoma law would require that the estate taxes in question be paid from the residuary estate.

8. A.R.S. § 14–3712, which became effective in 1974, provides:
 "If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage

or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust. The rights of purchasers and others dealing with a personal representative shall be determined as provided in §§ 14–3713 and 14–3714."

9. The Court notes that A.R.S. § 12–341.01 C, as amended, Laws 1978, was not in effect at the time of the trial court litigation in this matter.

ancillary administration without reasonable justification. In this connection, Paragraph THIRD of the Will provides that the Oklahoma real property of the decedent shall be included in the residuary estate *if* Julia Sanders 'is not living at the time of *distribution*'. Finally, despite the Orders of the Court, Mr. Boyer refused to distribute the estate of the decedent as required by law, thereby breaching his fiduciary duties and injuring the only other beneficiary, Julia Sanders. In this situation, it was error for the Court not to order an accounting and award attorneys' fees as requested." (Emphasis in original).

While we agree that appellant's conduct was erroneous and contrary to the best interests of appellee, we are not at this time convinced that the trial court abused its discretion in denying the extended relief requested by appellee. In connection with the allegation that appellant has continued to refuse to comply with the order entered by the trial court, we note that the order has been stayed pursuant to the filing by appellant of an appropriate supersedeas bond. We assume that any further dilatory action by appellant will be dealt with promptly and effectively by the trial court.

Appellee's cross-appeal is denied; appellee's request for attorney's fees on appeal pursuant to A.R.S. § 12–2106 is denied; and the trial court's order of March 8, 1978 is affirmed.

JACOBSON, P. J., and CONTRERAS, J., concur.