947 P.2d 886

**In The Matter of the ESTATE OF Jane W. MASON, Deceased.**

**James W. BARTON, Jr., Petitioner/Appellee/Cross–Appellant,**

v.

**Robert E. CRUCE, individually and as Personal Representative of the Estate of Jane W. Mason, deceased, Respondent/Appellant/Cross–Appellee.**

**No. 2 CA–CV 96–0318.**

Court of Appeals of Arizona, Division 2, Department A.

June 24, 1997.

Review Denied Dec. 16, 1997.

Reconsideration Denied Jan. 16, 1998.

Miller, Pitt & McAnally, P.C. by G. Eugene Isaak and Carole A. Summers, Tucson, for Petitioner/Appellee/Cross–Appellant.

Hawley Nystedt & Fletcher, P.C. by Gerald G. Hawley, Jill D. Wiley and Gary L. Fletcher, Tucson, for Respondent/Appellant/Cross–Appellee.

## OPINION

DRUKE, Chief Judge.

Jane Mason, widowed and childless, died testate in 1992. Her will made three specific bequests of $10,000 each and distributed the residue equally to appellee and his sister. The funds in three bank accounts passed to appellant outside the will because Mason had made him a joint tenant on the accounts before her death.

■ Mason's gross estate exceeded $5 million, including the funds appellant received from the bank accounts, and resulted in a total estate tax liability of about $2.2 million. Because the will was silent on the payment of estate taxes, appellant, as personal representative, paid them from the residuary estate. Appellee then petitioned the trial court to apportion the estate taxes between the probate and nonprobate assets.[1] The trial court granted the petition and ordered appellant to reimburse the estate $109,666. We reverse.

■ While both federal and state law impose estate tax liability, I.R.C. § 2001; A.R.S. §§ 42–1521, 42–1522, state law generally controls the apportionment of that liability.[2] *Riggs v. Del Drago*, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); *Brewer v. Peterson*, 9 Ariz.App. 455, 453 P.2d 966 (1969). In Arizona, a decedent may direct by will or other instrument how estate taxes are to be paid. *See Estate of Tovrea v. Nolan*, 173 Ariz. 568, 845 P.2d 494 (App.1992); *Brewer*. Absent such direction, we have twice held that the burden of paying estate taxes falls on the residuary estate.

The first case in which we so held was *In re Estates of Garcia*, 9 Ariz.App. 587, 455 P.2d 269 (1969). There, the will made a specific bequest to one son and left the residuary estate to his brothers and sisters. The will made no provision, however, for the payment of estate taxes and they were charged against the residuary estate. We affirmed and held, based on Arizona's then-existing statutes and the common-law or residuary rule, "that when specific provision for the payment of estate tax is omitted from a will and when it is a matter of allocating these charges between specific versus residuary bequests, the residuary estate must be first charged with the payment of these taxes." *Id.* at 593, 455 P.2d at 275.

■ We again addressed apportionment of estate taxes in *Sanders v. Boyer*, 126 Ariz. 235, 613 P.2d 1291 (App.1980). The issue resurfaced because, even though Arizona adopted the Uniform Probate Code (U.P.C.) in 1973, *see* A.R.S. §§ 14–1101 to 14–7308,

---

1. Probate assets are those transferred by testate or intestate succession; nonprobate assets are those transferred outside of probate, such as life insurance proceeds and, as here, jointly owned property. *See Sanders v. Boyer*, 126 Ariz. 235, 613 P.2d 1291 (App.1980).

2. The Internal Revenue Code allocates the tax burden only in specific circumstances. *E.g.*, I.R.C. §§ 2206, 2207. None of the provisions applies to this estate.

the legislature did not enact U.P.C. § 3–916, which apportions estate taxes "among all persons interested in the estate." Unif. Probate Code § 3–916, 8 U.L.A. 393 (1983). Thus, lacking an apportionment statute, we had to decide in *Sanders* whether *Garcia* remained good law. Like *Garcia*, the will in *Sanders* specifically devised certain property to a relative and distributed the balance through the residuary clause, but contained no provision governing the payment of estate taxes. The trial court ordered the taxes paid from the residuary estate, and we affirmed based on *Garcia* and § 14–3902, the abatement provisions of the then newly enacted U.P.C.[3] Section 14–3902(A) requires, in the absence of testamentary direction, that debts be paid first from "[p]roperty not disposed of by the will," next from "[r]esiduary devises," then from "[g]eneral devises," and finally from "[s]pecific devises." We therefore concluded in *Sanders* that, as between the specific devise and the residuary estate, "the trial court was correct in ruling that the residuary estate was chargeable with all estate taxes." 126 Ariz. at 240, 613 P.2d at 1296.

But neither *Garcia* nor *Sanders* addressed the apportionment issue raised here. They involved whether estate taxes should be apportioned among various probate assets; this appeal asks whether they should be apportioned among probate and *non* probate assets. Appellee urges us now to adopt the rule of partial apportionment that we discussed in *Garcia* but found inapplicable because that case involved only probate assets.[4] If applied here, the rule would apportion estate taxes "between the probate and nonprobate assets," and "as to the estate taxes allocated to the probate assets, the taxes [would be] charged against those assets which normally bear costs of administration [the residuary estate]." 9 Ariz.App. at 591, 455 P.2d at 273.

Appellee argues that "Arizona authority" compels the adoption of the apportionment rule, citing *Doetsch v. Doetsch*, 312 F.2d 323 (7th Cir.1963), and a 1967 Arizona Attorney General opinion that concurs with *Doetsch*. Op. Att'y Gen. 67–8 (March 3, 1967). In *Doetsch*, the court predicted Arizona would adopt apportionment based on the New Mexico Supreme Court's conclusion in *In re Gallagher's Will*, 57 N.M. 112, 255 P.2d 317, 328 (1953), that the residuary rule "is not productive of substantial justice" or "equal treatment." Our attorney general later agreed, stating that, in the absence of direction by statute or the decedent, "the law ought to be neutral and treat all classes of assets which contribute to the measure of the tax on an equal basis." Op. Att'y Gen. 67–8 at 17.

While we acknowledge the merits of the apportionment rule, we decline to adopt it judicially, as have a number of jurisdictions.[5] As noted above, the legislature did not enact the apportionment section of the U.P.C., § 3–916, when it adopted the U.P.C. in 1973. It also simultaneously repealed the then-existing probate statutes. Consequently, "Arizona ha[d] no statute which makes specific provision for the apportionment of estate tax liabilities generated by specific assets against the various persons receiving assets from the decedent's estate." *Sanders*, 126 Ariz. at 238, 613 P.2d at 1294. As a result, Arizona was left with the common-law or residuary rule recognized in *Garcia*. We do not believe this result is accidental. "[T]he legislature is presumed to know existing law when it enacts a statute." *Wareing v. Falk*, 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App.1995). We thus presume the legislature knew that, absent an apportionment statute or direction by the decedent, the burden of estate taxes would fall on the

3. "Abatement" is the reduction of testamentary legacies because estate assets are insufficient to pay debts and other legacies. *See* Thomas E. Atkinson, *Law of Wills* § 136 (2d ed. 1953).

4. We also discussed apportionment in *Brewer v. Peterson*, 9 Ariz.App. 455, 453 P.2d 966 (1969), but found apportionment inapplicable because the will directed payment from the residue.

5. For a state-by-state review of the estate tax burden, *see* Maurice T. Brunner, Annotation, *Ultimate Burden of Estate Tax in Absence of Statute, Will, or Other Provision*, 68 A.L.R.3d 714 (1976) (Supp.1996) and Jeffrey N. Pennell, *Tax Payment Provisions and Equitable Apportionment*, SB26 ALI–ABA 1455 (November 1996).

residuary beneficiaries. This presumption is reinforced by the legislature's failure to enact U.P.C. § 3–916 when it recently adopted amended sections of the probate code.[6] That the legislature twice declined to enact an apportionment statute after we decided *Garcia* almost thirty years ago amounts to an approval of the common-law rule. *See Madrigal v. Industrial Comm'n,* 69 Ariz. 138, 210 P.2d 967 (1949) (legislature's failure to change law for long period of time after judicial decision amounts to legislative approval and ratification). *See also White v. Pima County,* 161 Ariz. 90, 775 P.2d 1154 (1989) (if legislature has not clearly manifested its intent to repeal common-law rule, it will not be abrogated).

Accordingly, until changed by the legislature, we hold that the common-law or residuary rule remains the law in Arizona and applies to estates involving probate and non-probate assets. As we observed in *Garcia,* the rationale for the rule is the natural presumption, absent any contrary indication, that the decedent "intended a general devise of the residue of his estate to be that which was remaining after specific legacies and devises, and after the payment of debts and costs of administration." 9 Ariz.App. at 590, 455 P.2d at 272. In our view, this presumption applies equally to nonprobate assets. Unless the decedent directs otherwise, it is natural and reasonable to presume the decedent intended assets transferred outside probate to be free of the usual burdens imposed on the probate estate. In fact, the record here supports the presumption. Appellant testified that when he asked Mason "is there going to be taxes on these accounts that you set up with me[,] ... [s]he said no, the estate will pay all of the taxes and expenses."

In light of our holding, we conclude that the trial court erred in ordering appellant to contribute a pro rata share of the estate taxes and therefore vacate the order. Accordingly, we need not address the other issues raised on appeal or the issues raised in the cross-appeal that the trial court erred in not awarding appellee prejudgment interest or costs and attorney's fees.

FLOREZ, P.J., and BRAMMER, J., concur.

**6.** *See* A.R.S. §§ 14–2101 to 14–2902 and §§ 14–6101 to 14–6311.