177 Ariz. 550 (1993)
869 P.2d 1203
In the Matter of the ESTATE OF Charles L. SHANO, Deceased.
FIDUCIARY SERVICES, INC., and Ronald L. Maksym, Special Administrators-Appellants,
v.
Michael A. SHANO and Thelma Shano, Personal Representatives-Appellees.
No. 1 CA-CV 91-104.
Court of Appeals of Arizona, Division 1, Department D.
June 17, 1993.
Review Denied April 5, 1994.
*552 Ronald L. Maksym, P.C. by Ronald L. Maksym, Phoenix, for appellants.
S. Alan Cook, P.C. by S. Alan Cook, Phoenix, for appellees.
Michael A. Shano, in pro. per.
OPINION
TOCI, Presiding Judge.
Deborah Garrison ("Garrison"), a friend of Charles L. Shano ("decedent"), was a named beneficiary in a holographic will executed two days before decedent's death. At the time of decedent's death, he was married to his surviving spouse, Thelma Shano ("Thelma"), although dissolution proceedings were pending. Garrison's attorney, Ronald L. Maksym ("Maksym"), filed the holographic will for probate and obtained informal appointment of Garrison as the special administrator for decedent's estate. Later, when Thelma requested probate of an earlier will of decedent, the court suspended Garrison's powers because of the potential conflict between Thelma's interests and those of Garrison. After the parties agreed to appointment of an independent special administrator for decedent's estate, Maksym associated as co-counsel with the attorney for the special administrator.
Maksym appeals from the probate court's order disqualifying him as counsel for the special administrator and the court's judgment rejecting his request for payment of his attorney's fees from the estate and from Thelma's half of the community property. We must decide: (1) whether an attorney who represents the beneficiary of a holographic *553 will disinheriting decedent's surviving spouse may later represent the personal representative of decedent's estate and oppose the surviving spouse's claims against the estate; (2) whether a probate court may reject a request for fees by a special administrator's attorney who, because of a conflict of interest, has violated his fiduciary duty; and (3) whether such attorney may recover for services rendered to the estate before such violations occurred.
We hold that the probate court did not abuse its discretion in disqualifying Maksym as the special administrator's attorney. Garrison's interests were clearly adverse to those of Thelma. The record establishes that Maksym violated both his ethical duty to Garrison and his fiduciary obligation to Thelma when, after representing Garrison, he undertook representation of the estate and opposed Thelma's claims against the estate. We also hold that the probate court did not abuse its discretion when it denied Maksym's application for compensation. The record contains substantial evidence that Maksym's inability to exercise independent judgment on behalf of the estate caused excessive cost and delay in administering decedent's estate. Thus, we affirm the probate court's order and judgment.
FACTS AND PROCEDURAL HISTORY
Decedent died on February 24, 1989. He was survived by his wife, Thelma, and three adult sons, David, Michael and Steven. In 1986, the decedent had executed a will that left his estate to his wife and to the Shano Family Trust. Under that will, Thelma was to be the personal representative of the estate, and if she did not serve, David and Michael were to serve jointly.
At the time of his death, however, the decedent was separated from his wife and involved in dissolution proceedings. Two days before he died, the decedent drafted a holographic will leaving 25% of his estate to Garrison; 25% to his sister, Lillian Lapin; 25% to his son, Michael; 15% to Michael's infant son, Jason; and 10% to various educational institutions and charities. The decedent did not name a personal representative in the holographic will.
On March 2, 1989, Garrison, through her attorney, Maksym, filed the holographic will with the court. Alleging a need to protect the estate pending appointment of a personal representative, Garrison also sought informal appointment as special administrator pursuant to Ariz. Rev. Stat. Ann. ("A.R.S.") section 14-3614. The probate registrar granted the application and appointed Garrison as special administrator.
In June 1989, the probate court granted Garrison's motion for summary judgment, filed by Maksym, to have the holographic will admitted to probate as the last will and testament of decedent. The following day, however, David and Michael filed a petition, which Thelma later joined, seeking suspension of Garrison's powers as special administrator. They also requested probate of the will that decedent had executed in 1986 and sought appointment as special administrators and personal representatives of the estate.
After observing that the Shanos' pleadings disputed the validity of the holographic will, the probate court suspended Garrison's powers as special administrator. The court also ruled that neither David nor Michael should be appointed and advised the parties that, in the absence of their agreement, it would appoint a third party as special administrator.
Later, pursuant to the parties' agreement, the probate court appointed Fiduciary Services, Inc. ("Fiduciary") as special administrator of the estate. Fiduciary signed letters of special administration on September 21, 1989, and with Charles J. Dyer ("Dyer") as its attorney, Fiduciary began to administer the estate. Approximately six weeks later, Dyer filed a notice that Maksym would appear in association with him on behalf of Fiduciary.
Thelma then asserted several claims against the estate. First, she requested that the estate pay her attorney's fees incurred in the dissolution action pending at decedent's death. Second, she asked reimbursement for certain community debts paid by her from separate funds. Third, she claimed the proceeds from several life insurance policies on decedent's life. Finally, she asked for payment *554 of certain statutory allowances to which she was entitled as surviving spouse.
After approximately three months passed without any response to her claims, Thelma filed a petition asking the court to order the special administrator to pay her claims against the estate. Thelma also filed a petition asking the probate court to order payment of the statutory allowances authorized by A.R.S. sections 14-2401 through -2403. Maksym and Dyer, acting on behalf of Fiduciary, opposed Thelma's claims.
Next, Thelma moved for summary judgment to have one of the insurance policies declared to be her separate property. Maksym, appearing on behalf of the special administrator, filed a response opposing the motion. During the hearing, Thelma submitted evidence showing that she had paid the premiums on that policy solely from her separate funds and that the decedent had agreed to keep the policy in force for her benefit if she made these payments. The probate court determined that Thelma was entitled to summary judgment and awarded her the insurance policy as her separate property.
In the meantime, Michael filed a motion, in which Thelma joined, to disqualify Maksym as counsel for Fiduciary because of a conflict of interest. Maksym filed Fiduciary's response opposing the motion, claiming that his association with Fiduciary was proper. In his affidavit in support of Fiduciary's response, Maksym stated "[s]ubsequent to October 31, 1989, [he] had no contractual basis for billing [his] services to Garrison." After a hearing, the probate court, without making findings or conclusions, entered an order disqualifying Maksym as counsel for the special administrator. Maksym no longer appeared for Fiduciary, except to file an unsuccessful motion for a new trial on the issue of his disqualification.
On November 21, 1990, Thelma's remaining claims proceeded to trial. Fiduciary, represented by Dyer, lost on all issues. Thelma was granted judgment against the estate for the attorney's fees she had incurred in the dissolution proceedings. She was awarded the proceeds of all of the other insurance policies as her sole and separate property. She also obtained favorable rulings on her requests for the statutory allowances authorized by A.R.S. sections 14-2401 through -2403.
Fiduciary entered into a stipulation with Thelma for division and distribution of most of the community debts and assets. The stipulation authorized the estate to pay for all the fees and costs incurred in connection with administration of the estate. The probate court signed an order, approved by all of the attorneys who had appeared in the case except Maksym. The court mailed a copy of the stipulation to each of the attorneys, including Maksym.
On March 5, 1991, Maksym filed an application for compensation for the legal services he had provided to both Garrison and Fiduciary. He claimed approximately $10,000 in fees for his representation of Garrison and approximately $10,000 for his services to Fiduciary. He requested that one-half of his fees be paid from the decedent's share of the community property and one-half be paid from Thelma's share of the community property. Without making findings or conclusions, the probate court entered a judgment denying Maksym's application for compensation.
Maksym timely filed two notices of appeal: one from the order disqualifying his association with the special administrator and the other from the judgment denying his request for compensation. This court consolidated the two appeals.
DISCUSSION
1. Maksym's Derivative Fiduciary Duty To Thelma
We conclude that because Maksym represented conflicting interests, the probate court did not abuse its discretion in disqualifying Maksym. As attorney for the special administrator, Maksym owed a derivative fiduciary duty to the successors to decedent's estate, including the surviving spouse, Thelma. Maksym's representation of Garrison, one of the beneficiaries named in decedent's holographic will, materially limited Maksym's *555 ability to carry out his fiduciary duty to Thelma.
We begin by observing that the special administrator has a fiduciary duty to those who succeed to decedent's estate. A.R.S. § 14-3703(A) ("A personal representative is a fiduciary" and "shall use the authority conferred upon him ... for the best interests of successors to the estate."); A.R.S. § 14-1201(32) (personal representative includes special administrator). An estate's successors are "those persons, other than creditors, who are entitled to property of a decedent under his will or [Title 14]." A.R.S. § 14-1201(45). Under Title 14, Thelma was entitled, as surviving spouse, to receive from the estate an allowance in lieu of homestead, an exempt property allowance, and a family allowance. A.R.S. §§ 14-2401, -2402, and -2403. Thus, although Thelma was not a named beneficiary in decedent's holographic will, she was by definition a successor to decedent's estate.
Furthermore, probating the surviving spouse's interest in the community property creates a special relationship between the personal representative and the surviving spouse. According to A.R.S. section 14-3101(A), the special administrator was entitled to possess and administer Thelma's interest in the community property to pay the community debts, at least until the time for filing creditors' claims had expired. Because Fiduciary was entitled to manage Thelma's interest in the community property, Fiduciary clearly owed Thelma a fiduciary duty. See § 14-3703(A). See also § 14-3712 (personal representative is liable to interested persons for damages from breach of fiduciary duty) and § 14-1201(22) (surviving spouse is an "interested person"). Consequently, we reject Maksym's argument that the special administrator's duty extended only to the beneficiaries of the estate under the holographic will and that the special administrator satisfied its duty by protecting only the interests of those beneficiaries.
The parties have not cited, and we have not found, any case that holds that the attorney for a personal representative has a fiduciary duty to successors to the estate. This court held, however, in Fickett v. Superior Court of Pima County, 27 Ariz. App. 793, 795-96, 558 P.2d 988, 990-91 (1976), that the attorney for a guardian owes a duty of reasonable care to the guardian's ward. In deciding Fickett, we relied in part upon a California case extending an attorney's duty of reasonable care beyond his client, the testator, to the intended beneficiary of a will drawn by the attorney. We said, `"public policy requires that the attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons whose rights and interests are certain and foreseeable."' Id., at 795, 558 P.2d at 990 (citation omitted).
We conclude that, at least where the surviving spouse is concerned, similar considerations apply to an attorney employed to represent the personal representative of an estate. First, "[t]he lawyer is being compensated from the estate or trust, not by the fiduciary personally. His duty of loyalty and competence thus runs beyond the fiduciary to those whose property is being managed by the fiduciary." Jeanette K. Geiser, et al, Arizona Probate Code Practice Manual, § 1.6 at 5 (3rd ed. 1989). As discussed above, the surviving spouse is one whose interest in the community property is managed by the personal representative. Second, in Fickett, although the guardian and not the attorney controlled the affairs of the guardianship, we held that the attorney for the guardianship owed a fiduciary duty to the ward. A stronger case exists for imposing a similar duty on the personal representative's attorney, who generally has some control over the administration of the decedent's estate. Because of his superior knowledge and position of trust, the attorney for the personal representative is in an excellent position to exert a positive influence on the personal representative to properly discharge the latter's fiduciary duty to the surviving spouse. The attorney representing the personal representative is more likely to exert such influence if the attorney's duty to the surviving spouse is congruent with that of his employer, the personal representative.
We turn now to the question of whether Maksym represented conflicting interests. We begin with the principle that the attorney *556 for the personal representative of an estate must be neutral and should not favor the interests of any claimant to the estate. Ronald E. Mallen and Jeffrey M. Smith, 2 Legal Malpractice, § 26.5 at 602 (3rd ed. 1989). Thus, Maksym owed the same duty of fairness and impartially to Thelma as he owed to all the beneficiaries of decedent's holographic will, including Garrison. But, because Maksym also represented Garrison in probating the holographic will, he owed to her as a client a duty of undeviating and single allegiance. See Parsons v. Continental National American Group, 113 Ariz. 223, 227, 550 P.2d 94, 98 (1976). Consequently, when Maksym undertook the representation of Fiduciary, and with such representation the corresponding duty to Thelma of fairness and impartiality, he undertook the representation of conflicting interests.
The litigation over the life insurance policy aptly demonstrates the conflict between Thelma's interests and those of Garrison. A policy insuring decedent's life named Thelma as beneficiary, but in his holographic will the decedent attempted to change the beneficiary from Thelma to his estate. As attorney for Fiduciary, Maksym advocated that the insurance policy proceeds be paid to the estate. Had Maksym been successful, Garrison would have increased her share of the estate at Thelma's expense.
Other positions taken by Maksym on behalf of the estate also involved actual conflicts between Garrison's interests and those of Thelma. For example, Garrison would have directly benefitted through an increased share of the estate if the estate had successfully denied Thelma the statutory allowances authorized by A.R.S. sections 14-2401 through -2403. Similarly, Garrison's share of the estate would have increased had the estate prevailed against Thelma's claim for attorney's fees in the divorce action. Finally, Garrison would have benefitted and Thelma would have suffered a detriment if Maksym had successfully assessed part of his attorney's fees to Thelma's share of the community property rather than to the decedent's estate.
Generally, attorneys must avoid representing clients whose interests conflict. Bicas v. Superior Court In and For Pima Cty., 116 Ariz. 69, 73, 567 P.2d 1198, 1202 (App. 1977); 17 A.R.S. Rules of the Supreme Court of Arizona, Rules of Professional Conduct, Rule 42, ER ("ER") 1.7.[1] Specifically, "[a] lawyer is prohibited from representing a client if ... [that] representation would be `materially limited' by the lawyer's other interests or responsibilities." Charles W. Wolfram, Modern Legal Ethics, § 7.1.5 at 323-24 (1986); ER 1.7(b).
The competing interests between Garrison and Thelma prevented Maksym from exercising the independent judgment necessary to discharge his fiduciary duty to Thelma as surviving spouse. See ER 1.7 comment ("Loyalty to a client is ... impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests."). Because Maksym owed undeviating loyalty to his client, Garrison, he could not discharge the duty of fairness and impartiality he owed to Thelma.
In the very nature of things such must be the law. The old proverb, "No man can serve two masters," or, as the Spanish put it, "He who has two masters to serve must lie to one of them," is as true now as it ever was, and is as applicable in the administration of estates as elsewhere.
Farnsworth v. Hatch, 47 Utah 62, 151 P. 537, 541 (1915) (court properly removed administrator whose claim the estate resisted and which resulted in a lawsuit).[2] Thus, Maksym's *557 relationship with Garrison materially limited his representation of Thelma. ER 1.7(b). Consequently, Maksym should not have associated with Fiduciary.
In an effort to justify his dual representation, Maksym gives the example of the beneficiary of an estate who, after being appointed personal representative, hires his personal lawyer to represent the estate. Maksym's example assumes no conflict among the persons interested in the estate. Common representation of persons having similar interests is proper if the risk of adverse effect on those persons is minimal and the attorney complies with the provisions of ER 1.7(b). ER 1.7 comment (Conflicts in Litigation). Here, however, no evidence exists that Maksym complied with E.R. 1.7(b)(2) by consulting with Thelma and obtaining her consent to common representation. Furthermore, given the contrary interests of Thelma and Garrison, obtaining Thelma's consent would avail Maksym nothing because he could not have reasonably believed that his representation of Garrison did not have a substantial risk of an adverse effect on Thelma. See ER 1.7(b)(1).
Finally, Maksym seems to argue that because the attorney-client relationship with Garrison had terminated before Fiduciary employed him, he is not barred from representing the estate. The only support for this claim is Maksym's affidavit that states that seven days before associating with Dyer as co-counsel for Fiduciary, Maksym had no basis on which to bill Garrison for legal services. This ambiguous statement does not negate an attorney-client relationship between Maksym and Garrison.
But even if Maksym had terminated his relationship with Garrison, he had a continuing duty of loyalty to her. A lawyer's overriding duty of loyalty to a client is a basic tenet of the attorney-client relationship. Inherent in this principle is the concept that no other interest or consideration should be permitted to interfere with the lawyer's loyalty to his client. E.R. 1.7 comment (Loyalty to a Client); see also § Wolfram 7.1.3. at 316-17. Because the duty of loyalty is founded on the influence created by the attorney-client relationship, rather than the relationship itself, the duty of loyalty may continue after the relationship is terminated. Estate of Richards, 4 Kan. App.2d 26, 602 P.2d 122, 127 (1979); see also Unified Sewerage Agency v. Jelco, 646 F.2d 1339, 1345 n. 4 (9th Cir.1981) (duty of loyalty to former client continues even though attorney withdraws from representation of former client after motion to disqualify is filed).
In attempting to protect the confidentiality and loyalty interests of a former client, a lawyer's representation of a new client may be hobbled. Wolfram, § 7.4.2. at 362. For this reason, ER 1.7 prohibits the representation of the second client when that representation would be materially limited by the lawyer's responsibilities to the first client. Here, Maksym's actions on behalf of Fiduciary in denying Thelma's legitimate claims for statutory allowances give rise to an inference that his loyalty to Garrison tainted his representation of the estate and Thelma.
2. Standard of Review
A trial court may disqualify an attorney who represents conflicting interests. Gas-A-Tron of Ariz. v. Union Oil Co. of California, 534 F.2d 1322, 1324 (9th Cir.1976), cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). Unless there is an abuse of discretion, we will not disturb a trial court's decision in a disqualification proceeding. William H. Raley Co. v. Superior Court, 149 Cal. App.3d 1042, 197 Cal. Rptr. 232, 237 (4 Dist. 1983). No abuse of discretion occurs if there is a reasonable basis in the record to support the trial court's judgment. Grand Real Estate, Inc. v. Sirignano, 139 Ariz. 8, 14, 676 P.2d 642, 648 (App. 1983). Although no request was made by either party for express findings and conclusions regarding Maksym's disqualification, and the court did not make its own findings and conclusions, we will imply the necessary findings and conclusions, supported by the record, *558 to sustain the judgment. Coronado Co., Inc. v. Jacome's Dept. Store, 129 Ariz. 137, 139, 629 P.2d 553, 555 (App. 1981). Here, the record establishes that Maksym breached his derivative fiduciary duty of neutrality and impartiality to the surviving spouse, and thus a reasonable basis exists for the probate court's decision. We will not disturb the probate court's judgment.
3. Maksym's Fees For Services Rendered the Special Administrator
Maksym contends that he is entitled to $10,000 in compensation for his representation of Garrison and an additional $10,000 for services rendered to the special administrator. He argues that Thelma's portion of the community property should pay half of these fees and that the estate should pay the other half. We disagree.
Because "[e]xpenses of administration shall be charged against separate property and decedent's half of the community property," A.R.S. section 14-3902(C)(3), the probate court had no authority to award fees from Thelma's half of the community. See A.R.S. § 14-3101(A) (community property is subject to administration only to extent necessary to pay community claims). Maksym's entitlement to compensation in this case must come solely from the decedent's estate.
We conclude, however, that the probate court properly denied Maksym's request that the estate compensate him for his services to Fiduciary. Although a personal representative or special administrator who acts in good faith may receive reasonable fees from the estate, A.R.S. section 14-3720, the estate will not be required to pay fees caused by malfeasance of the personal representative. Tindall v. State By & Through Tex. Dept., etc., 671 S.W.2d 691, 693 (Tex. App. 1984). We believe a similar rule should apply to an attorney for the special administrator who has violated his ethical and legal duty to a successor to decedent's estate.
The probate court could have reasonably inferred from the record that Maksym's divided loyalty and lack of independent judgment on behalf of the special administrator caused much of the litigation involving the estate. The probate court also could have reasonably inferred from the favorable resolution of Thelma's claims against the estate that Maksym's opposition to such claims on behalf of the special administrator was meritless. Under these circumstances, the estate should not have been required to pay Maksym for services arising after he undertook the representation of Fiduciary. Coronado, 129 Ariz. at 139, 629 P.2d at 555 (absent express findings, we imply findings which are reasonably supported by the record).
4. Maksym's Entitlement To Attorney's Fees For Services Performed For the Estate While He was Representing Garrison
We also conclude that the probate court did not abuse its discretion in rejecting Maksym's request that the estate pay him for legal services rendered to Garrison in connection with probate of the holographic will. In re Estate of Brown v. First Nat'l Bank of Ariz., 137 Ariz. 309, 670 P.2d 414 (App. 1983), this court departed from the established rule that the only attorney's fees payable from the assets of the estate are those of lawyers hired by the personal representative. Id. at 311-12, 670 P.2d at 416-17. We found that the provisions of A.R.S. section 14-1103[3] had expanded the jurisdiction of the probate court over the granting of fees. We concluded that the general rule of equity, that persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund, was applicable in the probate setting. Id. at 312, 670 P.2d at 417.
Although Maksym's legal services in obtaining admission of the holographic will to probate arguably benefitted the estate pursuant to the common fund doctrine, nothing in Brown requires the estate to pay attorney's fees in this situation. To the contrary, Brown states, "[w]hether and to what extent such fees should be allowed is a question best *559 left to the probate court to decide in the sound exercise of its discretion on a case-by-case basis." Id. at 313, 670 P.2d at 418 (emphasis added); see also Id. at 314, 670 P.2d at 419 ("We do not hold that as a matter of fact and law [that an attorney is] entitled to an award of fees in [a probate case].").
Had Maksym's claim for fees resulted exclusively from having the holographic will admitted to probate, the probate court's denial of Maksym's fee may have constituted an abuse of discretion. Maksym, however, chose to associate as counsel for the special administrator after first representing Garrison. The resulting conflict of interest between Garrison and Thelma contributed to waste and delay in the handling of the estate and caused Thelma to incur unnecessary attorney's fees. Under these circumstances, the probate court's refusal to impose on the estate those fees was not an abuse of discretion. The court's decision is supported by the record. See Coronado, 129 Ariz. at 139, 629 P.2d at 555.
CONCLUSION
For the reasons set forth in this opinion, we affirm the probate court. Appellees request attorney's fees on the basis that this appeal was frivolous. Because appellees do not substantiate their request, however, we find no basis for awarding attorney's fees.
CLABORNE and GRANT, JJ., concur.
NOTES
[1] ER 1.7 provides in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) The lawyer reasonably believes that the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:
(1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation....
[2] See also Barth v. Platt, 52 Ariz. 33, 37, 78 P.2d 995, 996-97 (1938) (court properly removed administrator whose private interests conflicted with his official duties); In re Bogert's Estate, 76 Utah 566, 290 P. 947, 949-50 (1930) (court properly removed administrator who hired attorney to administer estate and litigate administrator's personal claim against estate).
[3] Section 1103 states: "Unless displaced by the particular provisions of this title, the principles of law and equity supplement its provisions."